UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| H. LEWIS PACKAGING, LLC, <br>     Plaintiff, | : <br> : <br> : |
| -vs- | : Civ. No. 3:02cv2259(PCD) <br> : |
| SPECTRUM PLASTICS, INC., <br>     Defendant. | : <br> : |

**AMENDED RULINGS ON MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER AND MOTION TO STAY**

Defendant moves to dismiss the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), or in the alternative to transfer the case to the Southern District of California. For the reasons set forth herein, the motion to dismiss is **denied** and the motion to transfer is **denied**.

I.  BACKGROUND

The following are the relevant facts as alleged in the complaint and affidavits. Howard Weinstein is plaintiff's manager. Plaintiff was incorporated in May 2000 in Connecticut. Weinstein, then vice president for Trinity Packaging Company ("Trinity"), first met Les Yager, defendant's vice president of sales and marketing, in Las Vegas, Nevada. Yager flew to Trinity's office in New York for purposes of arranging a business relationship between Trinity and defendant. At that time, Weinstein informed Yager that he intended to leave Trinity and form a new company and wanted to serve defendant through the new company. Yager declined the offer at the time because he did not want to jeopardize the relationship with Trinity.

Weinstein contacted defendant from both Trinity's office in New York and from his home in Connecticut in an attempt to establish a business relationship with plaintiff. According

to Yager, defendant refused until it received a list of prospective customers Weinstein planned to target on defendant's behalf. Plaintiff was then paid as an independent contractor.

In the course of the relationship, defendant, a California corporation without a license to do business in Connecticut, provided business cards bearing its name identifying Weinstein as its account executive located at a regional office in Connecticut and listed Connecticut telephone numbers. Although the companies referred to defendant by plaintiff were predominantly if not entirely located outside Connecticut, plaintiff's performance accounted for $18 million in sales and orders were forwarded through plaintiff's Connecticut office to defendant. Defendant further sent payments for services rendered by plaintiff to plaintiff's Connecticut address.

Weinstein met with Frank Su, one of defendant's officers, and Yager, at the Connecticut office. Yager met with Weinstein on two other occasions at the Connecticut office. Weinstein indicates that he solicited Connecticut customers for defendant at defendant's request, specifically Subway, Connecticut Packaging and Retail Brand Alliance and has sold $200,000 in product, through a distributor, to William Carter Company in Bridgeport. Remington Products, another Connecticut company, purchased $30,000 in products by orders forwarded through plaintiff to defendant.

The present complaint involves an alleged breach of an oral agreement between plaintiff and defendant to pay commissions in return for securing corporate purchasers of its plastic bags. Pursuant to the agreement, plaintiff referred a number of manufacturers and distributors seeking to purchase plastic bags to defendant, but defendant refused to pay the commission promised plaintiff after purchases were made. Plaintiff also seeks an accounting for all commissions due it. Finally, plaintiff alleges a second breach of contract for failure to deliver merchantable goods,

thereby causing injury to plaintiff's future business prospects.

II. MOTION TO DISMISS

Defendant moves to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(2) claiming that this court lacks personal jurisdiction over it.

### A. Standard

The burden is plaintiff's to establish personal jurisdiction over defendant. *Distefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). As such, when the determination is based exclusively on pleadings and affidavits without the benefit of an evidentiary hearing, plaintiff must establish a prima facie showing of personal jurisdiction. *See id.*; *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). The allegations set forth in plaintiff's pleadings and affidavits must be construed favorably to plaintiff and all doubts resolved in plaintiff's favor. *Whitaker*, 261 F.3d at 208.

### B. Personal Jurisdiction

Defendant argues that personal jurisdiction is not proper as it has not done business in this state, that it did not enter into its contract with plaintiff in Connecticut and requiring it to defend a lawsuit in Connecticut would violate due process. Plaintiff responds that there is sufficient basis on which to establish personal jurisdiction over defendant.

The first step of a personal jurisdiction analysis involves a review of the state long-arm statute of the forum state. *See id.* If the long-arm statute applies, the review proceeds to the federal question of whether the exercise of such jurisdiction is consistent with due process. *See id.*

Connecticut's long arm statute governing jurisdiction over foreign corporations, CONN.

GEN. STAT. § 33-929, provides in relevant part:

> (e) Every foreign corporation which transacts business in this state in violation of section 33-920, shall be subject to suit in this state upon any cause of action arising out of such business.
>
> (f) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) . . . ; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

CONN. GEN. STAT. § 33-929(e) & (f).

Plaintiff argues three bases for jurisdiction: (1) defendant has "transacted business" in Connecticut; (2) the contract between plaintiff and defendant was made in Connecticut and (3) defendant may be subject to liability for tortious conduct in this state.

Plaintiff's contractual theory is found to be the only theory on which jurisdiction could be premised, the remaining bases failing for discredited assertions that jurisdiction could be premised on stream of commerce transactions through intermediate companies or independent contractors or that a claim not alleged in a complaint could be used to invoke long-arm jurisdiction. As such, discussion is limited to whether the contract was "made" in Connecticut.

Taking all plaintiff's factual allegations as true and resolving discrepancies in favor of plaintiff, the contract is found to have been made in Connecticut. The contract was arranged over the telephone by Weinstein in plaintiff's Connecticut office. The offer to pay commissions was accepted by Weinstein on behalf of plaintiff at that time. Defendant alleges to the contrary it

-4-

was subjected to an aggressive campaign by plaintiff and accepted plaintiff's offer when he faxed a list of potential customers. Ninety percent of the work required by defendant was performed in Connecticut. Follow-up correspondence was sent to Connecticut.

It is plaintiff's responsibility to establish the existence of a contract. *See Chemical Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F.Supp. 21, 24 (D. Conn. 1994). The parties do not dispute the existence of a contract, but rather where the contract was formed. Defendant contends it accepted plaintiff's offer to work for it after it was faxed a list of potential clients, plaintiff alleges that defendant offered[1] to pay it a commission for services rendered as its agent in Connecticut, and Weinstein, on behalf of plaintiff, verbally accepted the offer from plaintiff's Connecticut office. "[A] contract is considered made when and where the last thing is done which is necessary to create an effective agreement." *Id.* As doubts as to factual allegations will be resolved in favor of plaintiff, plaintiff has satisfied a prima facie showing under the long-arm statute that the oral agreement was made in Connecticut.

Having established that the long-arm statute supports personal jurisdiction, the question then becomes whether such jurisdiction violates the Due Process Clause of the United States Constitution. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir. 1996); *Bensmiller v. E.I. Dupont De Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995). The resolution of the question depends on whether defendant has sufficient "minimum contacts" with Connecticut such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154,

---

[1] This Court will presume Weinstein does not use the word "offer" in its contractual sense. While a factual allegation must be accepted in a motion to dismiss, a conclusory legal conclusion need not be credited.

158, 90 L.Ed. 95 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L. Ed. 2d 1283 (1958). "[T]he defendant's conduct and connection with the forum State [must be] such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).[2]

It is without question that the mere fact that defendant enters into a contract with plaintiff will not, in and of itself, establish personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In *Rudzewicz*, the defendant reached out to the plaintiff situated in another state and entered into a detailed franchise agreement requiring "continuing and wide-reaching contacts with " the plaintiff in the foreign state. *Id.* at 480. As such, the "quality and nature" of the defendant's relationship to the foreign state could not be considered "random," "fortuitous," or "attenuated." *Id.*

Defendant sent payments to plaintiff in Connecticut, printed business cards identifying plaintiff's office as its regional office, met with plaintiff's agent in Connecticut and entered into an agreement with a company incorporated in Connecticut. Correspondence was sent to defendant at the Connecticut address. Although it may very well be true that Weinstein's decision to form a company in Connecticut was a unilateral act and such had no bearing on

---

[2] Personal jurisdiction may arise by specific jurisdiction, i.e. purposeful availment of benefits of forum state, or general jurisdiction, i.e. continuous and systematic contacts with forum state not necessarily related to the claim. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002). Notwithstanding plaintiff's argument to the contrary, the fact that some of defendant's products arrive in Connecticut through interstate commerce or officers may have traversed the state does not rise to the level of a general presence in the state.

defendant's decision to form a business relationship with plaintiff, the fact remains that defendant maintained a business relationship with plaintiff. The facts are not comparable to the "unilateral act" envisioned in *Kulko v. Superior Court*, 436 U.S. 84, 96, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978), where the only contact with the forum state was an obligation to make family support payments after the wife's relocation to the forum. The fact that it was plaintiff, not defendant, that initiated the business relationship is entitled to some weight in determining minimum contacts. *See Burger King Corp.*, 471 U.S. at 478. The continuing course of conduct, including telephone calls, commission payments, and affiliation with the forum through business cards, in the aggregate suffices to provide defendant with fair warning that acts or omissions may require it to defendant a lawsuit in Connecticut. *See North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690-91 (3d Cir. 1990) (finding jurisdiction based in part on payments made to forum state).

Having found minimum contacts necessary to sustain jurisdiction, the issue becomes whether defendant can establish that the exercise of such jurisdiction is unreasonable. Five factors are considered in determining whether the exercise of jurisdiction is reasonable: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996). Defendant must, however, make a compelling showing that the exercise of jurisdiction is unreasonable under the circumstances. *Id.* In response, defendant argues only that "the contacts

with Connecticut are far too attenuated to satisfy either prong of the due process analysis." Such does not constitute a compelling basis on which to decline jurisdiction. The motion to dismiss for lack of personal jurisdiction is denied.

### C. Improper Venue

Defendant also moves to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(3) for improper venue. As the complaint alleges diversity jurisdiction under 28 U.S.C. § 1332, the relevant venue provision is 28 U.S.C. § 1391(a), which provides that a complaint may be filed in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff must prove that venue in this forum is proper. *See ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 424 (S.D.N.Y.1998).

In light of the foregoing discussion applicable to personal jurisdiction, venue is proper pursuant to § 1391(a)(2). The complaint alleges breach of an agreement. Under the agreement, plaintiff contacted potential customers from its office in Connecticut. The customers then submitted orders to defendant in California, after which defendant submitted payments in the form of commissions to plaintiff in Connecticut. As such, it cannot be said that a substantial part of events significant to the claim did not occur in Connecticut.

III. MOTION TO TRANSFER

In the alternative, defendant moves to transfer the case to California pursuant to 28 U.S.C. § 1404(a) arguing that the availability of witness, relevant documents, and the cost in

employee hours required to travel to Connecticut.  Plaintiff responds that he is the business and his absence would be devastating to operations, that defendant's agents have traveled to New York on several occasions, that defendant's identification of his business as a regional office justifies the travel required and that key witnesses identified by defendant are located in states on the east coast, not the west coast.

Several factors are relevant in ruling on a motion to transfer.  Such factors include the convenience of the parties and witnesses, the relative ease of access to sources of proof, the cost of obtaining the attendance of witnesses and other practical problems that make trial of a case more expeditious and inexpensive, and the interests of justice.  *See SEC v. Electronics Warehouse, Inc.*, 689 F.Supp. 53, 73 (D. Conn. 1988).  Unless compelling circumstances warrant otherwise, plaintiff's choice of forum should control.  *See Filmline (Cross-Country) Prods. v. United Artists Corp.*, 865 F.2d 513, 525 (2d Cir. 1989); *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 70 (2d Cir.2001).

Both plaintiff and defendant claim financial hardship as a consequence of being required to travel from one coast to the other.  Similarly, both sides argue that necessary documentary evidence and witnesses would be more available in their respective forum choice.  It is not apparent, under the circumstances, that a change of venue will do more than shift the inconvenience from defendant to plaintiff.  *See Brierwood Shoe Corp. v. Sears, Roebuck & Co.*, 479 F. Supp. 563, 566 (S.D.N.Y. 1979).  As defendant has not carried its burden in establishing that its choice of venue is more appropriate than plaintiff's choice, *see Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950), the motion to transfer is denied.

IV. CONCLUSION

Defendant's motion to dismiss (Doc. No. 14-1), or in the alternative to transfer (Doc. No. 14-1), is **denied**. Defendant's motion to stay discovery pending resolution of the motion to dismiss(Doc. No. 19) is **denied as moot**.

SO ORDERED.

Dated at New Haven, Connecticut, December ___, 2003.

/S/
Peter C. Dorsey
United States District Judge
